## LEVIN v. AMERICAN FURNITURE COMPANY.

1. An affidavit made to obtain the issuance of an attachment for purchase-money, which stated that the amount named was due for the purchase-money of certain articles set forth in a list, and which were in possession of the defendant, was amendable by adding a more definite description of the property and stating where it was located, in order to more fully identify it.

2. The writ of attachment issued upon such affidavit, which commanded the levying officer "to attach and seize so much of the property of" the defendant as will make a named sum and all costs "out of the property above described," was a specific attachment against the property described, and was not objectionable as being a general attachment against the defendant.

3. Where an affidavit to obtain an attachment on behalf of a corporation was made by its president, and he executed the attachment bond on behalf of his principal, and also signed it individually as surety, this was not a void bond, and there was no error in refusing to dismiss the proceeding on the ground that such agent was incompetent to become the surety of his principal, and that the proceeding was therefore void.

Submitted June 10,—Decided December 24, 1909.

Attachment. Before Judge Pendleton. Fulton superior court. January 4, 1909.

*C. B. Reynolds,* for plaintiff in error.

*E. D. Thomas* and *Anderson, Felder, Rountree & Wilson,* contra.

LUMPKIN, J. On November 5, 1908, the American Furniture Company, a corporation, sued out an attachment for the purchase-price of personal property against M. Levin. It was levied on certain goods. The defendant moved to dismiss the attachment, on the following grounds: (1) Because the same person, to wit M. W. Reid, made affidavit to the attachment and signed the name of the plaintiff to the attachment bond and signed as surety in said bond, there being no other surety. (2) Because the affidavit to said attachment did not adequately, and in the manner required by law, describe the property to be levied on. (3) Because the attachment as issued was a general attachment instead of an attachment against the specific property alleged to have been purchased. The plaintiff amended its affidavit of attachment as to the description of the property levied on. The court allowed the amendment, and over-ruled the motion to dismiss. The defendant excepted.

The original affidavit made for the purpose of obtaining an attachment for the purchase-money of personal property stated that the amount named was due for the purchase-money of certain prop-

erty named in an exhibit thereto attached, and that the debt was due and the defendant was in possession of the property. The exhibit attached to the affidavit contained a list of certain articles of furniture, with prices thereto annexed. The writ of attachment commanded the officers to whom it was directed to levy on and seize the property of the defendant and make the sum stated in the affidavit "out of the property above described." After the motion to dismiss was made, the plaintiff, by leave of the court, amended the affidavit by more specifically describing the property mentioned in the exhibit to the original affidavit, and stating where it was located. The Civil Code, § 4541, declares, that, when the affidavit has been made and the bond given, it shall be the duty of the officer, before whom such affidavit is made, to issue an attachment against the defendant, "which shall be levied only on the property described in said affidavit." The writ of attachment issued in the present case was not a general one, but was one to be executed by levy and sale of the described property.

The Civil Code, § 5122, expressly provides that all affidavits which are the foundation of legal proceedings shall be amendable. It has been said by this court that this statute is remedial in its nature, and is therefore to be liberally construed and applied. *Collins* v. *Taylor*, 128 *Ga.* 789, 790 (58 S. E. 446). It was contended that, under the rule in *Moore, Marsh & Co.* v. *Neill, 86 Ga.* 186 (12 S. E. 222), the attachment was void, and could not be amended. The attachment was not void. The property on which it was sought to have the levy made was mentioned and alleged to be in the possession of the defendant. The amendment merely made the description more definite. In the case last cited there was no effort to amend the petition by making an additional description or affidavit in connection with it, but to attach to the petition certified copies of certain documents connected with other attachment cases, but which had never been part or parcel of the papers appertaining to the case before the court. The proceeding there involved was one to obtain an attachment against a person as a fraudulent debtor. Under a former ruling of the Supreme Court, the attachment as originally issued was void. The attachment now under consideration was obtained by the American Furniture Company, apparently a corporation. The affidavit was made by M. W. Reid, as the president of such company, on its behalf. The attachment bond was

signed by the company through Reid as its president, and he signed individually as surety. It is contended that this bond was void, because the agent of the company who made the affidavit to obtain the attachment on its behalf could not become its surety on the attachment bond. The Civil Code, §4511, provides, that, before process of attachment shall issue, the party seeking it, his agent or attorney at law, shall make the necessary affidavit. Section 4512 provides that the party seeking the affidavit shall give bond, with good security, in an amount at least double the debt sworn to, payable to the defendant in attachment, conditioned to pay such defendant all damages that he may sustain, and also all costs that may be incurred by him in consequence of suing out the attachment, in the event the plaintiff shall fail to recover in the case. It then declares, "and where the affidavit is made by the agent or attorney at law of the plaintiff, such agent or attorney at law is hereby authorized to sign the name of the principal, who shall also be bound thereby in the same manner as though he had signed it himself." It was argued that the expression, "who shall also be bound," etc., indicated that both the principal and the agent should be bound. But this is not the meaning of the statute. It first provides for the giving of the bond by the principal, and then adds that if it be executed by the agent or attorney, such agent or attorney may sign the principal's name, and the latter will also be bound, as though he had signed it himself. The word "also" did not mean that the principal and agent should both be bound by the bond, but that the bond executed by the agent or attorney should likewise bind the principal, as if he had signed it himself.

But it was said that an agent who commits a tort on behalf of his principal may be liable as well as the principal, and that therefore as it may develop that the suing out of the attachment and causing a seizure of the defendant's property thereunder was a tort for which an action might be brought against both principal and agent, the agent was already bound, and could not become the surety of his principal. The fallacy in this reasoning consists in assuming that the possibility that an agent who acts for his principal in a suit may commit a tort, and become liable therefor, is such an actual and certain liability on his part along with his principal as to be the equivalent of or to overlap the contractual liability arising from signing the bond, and as to disqualify him as a surety.

The possibility that an agent who conducts a suit for his principal, and makes an affidavit or does other acts in connection therewith, may under some circumstances be liable in an action for malicious use or abuse of legal process, or for malicious prosecution of the civil action, or in some other form of an action of tort, is a mere contingency, dependent on entirely different principles from his contractual liability as surety on the attachment bond. It would doubtless surprise the members of the legal profession if they should be informed that every attorney at law who makes affidavit for the purpose of obtaining an attachment on behalf of his client, and under direction of the latter and upon information furnished by him, creates a fixed and certain liability on himself in favor of the defendant. A corporation can act only through its agents. It would be a dangerous matter for any one of such agents to make the affidavit necessary to enforce by attachment the claims of his principal, though under instructions from the latter, if by merely doing so he established a fixed liability against himself and in favor of the defendant in attachment. The possible liability of the agent, if he commits an actionable tort, is entirely distinct from, and governed by different principles from, the liability of a surety on the attachment bond. The bond required by the statute is conditioned to pay the defendant "all damages that he may sustain, and all costs that may be incurred by him in consequence of suing out the attachment, in the event the plaintiff shall fail to recover in said case." The only conditions necessary to a recovery on the bond are failure on the part of the plaintiff to recover in the case, and the sustaining by the defendant of damages or costs in consequence of the suing out of the attachment. No question of malicious use or abuse of legal process, or other additional element necessary for a recovery in tort, is involved. The two things are entirely distinct. The one is a possibility of liability arising in tort; the other is a definite contract upon the terms stated in the bond. An attorney can not become the surety of his client. He is prohibited from doing so by a rule of court. Civil Code, §5641. Still it was held in *Burton* v. *Wynne*, 55 *Ga.* 615, that the fact that an attorney signed a garnishment bond did not render the proceeding void. There is no such inconsistency in the making of an affidavit by an agent of a corporation, in order to obtain an attachment for his principal, and the assumption of the position of surety on the attachment

43

bond by such agent as to render the entire proceeding void. It has been held in several cases that one can not in effect become his own surety, where the law requires him to give a bond; and by an extension of the principle, that, where one has already become a surety on a bond required to be given in the progress of a case, and from a judgment, the result of which is to fix liability upon him along with his principal, an appeal is taken, he can not become surety on the appeal bond. *Gordon* v. *Robertson,* 26 *Ga.* 410; *Eufaula Home Ins.* v. *Plant & Cubbedge,* 36 *Ga.* 623, 624; *Benson* v. *Shines,* 107 *Ga.* 407 (33 S. E. 439); *Napier* v. *Woodall,* 118 *Ga.* 830 (45 S. E. 684). Still, even in such a case, it has been said that it did not lie in the mouth of the surety himself to make the objection. *Stewart* v. *Hall,* 106 *Ga.* 172 (32 S. E. 14). The difference between the fixed liability of a surety resulting from contract or judgment in cases like these, and the possibility of an agent's being liable in tort along with his principal, is apparent.

*Judgment affirmed. All the Justices concur.*